UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>PLAINTIFF<br><br>V.<br><br>CAROLYN LEE,<br><br>AND<br><br>JOHN ZARNOCH, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF EMILY ZARNOCH,<br><br>DEFENDANTS | CIVIL NO. 2:16-CV-454-DBH |

**DECISION AND ORDER ON STIPULATED RECORD**

The issue in this case is the interpretation of a "regular use" exclusion clause in an automobile insurance policy. The parties have presented their dispute as a "case stated," *i.e.*, with stipulated facts and documents.[1]

---

[1] At the Local Rule 56(h) Conference, the parties indicated that the case did not involve disputes of material fact and suggested that, instead of filing cross-motions for summary judgment, they would submit the case to the court as a "case stated." Report of Pre-Filing Conference 2 (ECF No. 17). Consequently, the parties provided a stipulated record of undisputed facts (ECF No. 20), and have not "sought to introduce additional factual evidence or asked to present witnesses." United Paperworkers Int'l Union Local 14 v. Int'l Paper Co., 64 F.3d 28, 31 (1st Cir. 1995). "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record." Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 10–11 (1st Cir. 2012) (internal quotation marks omitted). Therefore, I am "freed from the usual constraints that attend the adjudication of summary judgment motions," and may "engage in a certain amount of differential factfinding, including the sifting of inferences," which would be subject to review for clear error. EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 (1st Cir. 1995). The First Circuit has not specified an exact format that my findings of fact and conclusions of law must take in a case stated. See, e.g., Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 644 (1st Cir. 2000). I do note, however, that in the context of Federal Rule of Civil Procedure 52(a), the commentators believe that no findings are necessary on stipulated or undisputed facts, unless conflicting inferences can be drawn from the undisputed facts. E.g.,

## SUMMARY OF FACTS

Carolyn Lee, driving a 2003 Chevrolet Suburban, struck and killed a pedestrian, Emily Zarnoch. Statement of the Case ¶¶ 1–2 (ECF No. 20) (SOC). Lee Tree Company owned the vehicle. SOC ¶ 2. Carolyn Lee's father, Michael Lee, an officer of Lee Tree Company, gave Carolyn Lee permission to drive the vehicle on this occasion because the car she usually drove was having mechanical difficulties. Michael Lee Dep. Tr. 31:12–25, SOC, Ex. 12 (ECF No. 20-12) (Lee Dep. Tr.). Hartford Insurance Company (Hartford) provided coverage on the 2003 Chevrolet Suburban under a commercial insurance policy that Hartford issued to Lee Tree Company. SOC ¶¶ 3–5. A different car, the car that Carolyn Lee primarily used, was listed and covered on a personal automobile policy that Progressive Northwestern Insurance Company (Progressive) issued to her father Michael Lee. SOC ¶¶ 6–7.

Hartford retained an attorney to represent the interests of Carolyn Lee and her family. SOC ¶ 13. The Estate of Ms. Zarnoch eventually settled its claim against Carolyn Lee and others, but Progressive refused to participate. SOC ¶ 15. A stipulated judgment was filed in Maine Superior Court. SOC ¶ 16. There is an outstanding unpaid balance of $2,311,053.75 on the consent judgment, and the Estate obtained rights to pursue claims under the $250,000 Progressive policy. Defs.' Mot. Summ. J. 2–3 (ECF No. 24) (Defs.' Mem.); see also SOC ¶ 15.

---

9 James Wm. Moore et al., Moore's Federal Practice ¶ 52.11 (3d ed. 1997); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2579 (3d ed. 1998). This opinion includes the inferences I draw from the parties' stipulated facts, as well as my conclusions of law.

## PROCEDURAL HISTORY

Progressive has brought this lawsuit against Carolyn Lee and the Estate of Emily Zarnoch seeking judgment that it has no duty to defend or indemnify under the policy it issued to Michael Lee. Am. Compl. ¶¶ 15, 17 (ECF No. 3). The defendants have counterclaimed, asserting counts of unfair claims practices and negligence, and seeking a declaration that Progressive breached its duties to defend and indemnify. Defs.' Countercl. ¶¶ 11–20 (ECF No. 5).

## ANALYSIS

The Progressive insurance policy excludes from its coverage:

> 11. bodily injury or property damage arising out of the ownership, maintenance, or use of any vehicle owned by you or furnished or available for your regular use, other than a covered auto for which this coverage has been purchased.

Progressive Maine Auto Policy, SOC, Ex. 7, at 4 (ECF No. 20-7). The policy defines "you" and "your" to mean "a person shown as a named insured on the declarations page." Id. at 2. Carolyn Lee's father, Michael Lee, is the named insured on the declarations page. Progressive Declarations Page, SOC, Ex. 3 (ECF No. 20-3). The Estate of Emily Zarnoch's claims arose out of the "use" of the Chevrolet Suburban because it is the vehicle that struck and killed Emily Zarnoch. SOC ¶¶ 1–2. But, as previously stated, Michael Lee did not own the vehicle (it was owned by Lee Tree Company), and he did not list it on his personal Progressive policy (it was listed on Lee Tree Company's commercial Hartford Policy). SOC ¶¶ 2–4. The question about which the parties disagree under Exclusion 11 is whether the Chevrolet Suburban was "furnished or available for [Michael Lee's] regular use."

Insurance policy "regular use" exclusions have appeared in Maine Law Court decisions as early as 1970, Allstate Ins. Co. v. Government Employees Ins. Co., 263 A.2d 78 (Me. 1970), and as recently as this year, Estate of Mason v. Amica Mut. Ins. Co., 2017 ME 58, ¶ 11, 158 A.3d 495. See also Acadia Ins. Co. v. Mascis, 2001 ME 101, ¶ 4, 776 A.2d 617. The Maine Law Court is clear that "whether the underlying facts bring the claim within the ['regular use'] policy exclusion is . . . a matter of law." Estate of Mason, 2017 ME 58, ¶ 9, 158 A.3d 495 (quoting Allstate, 263 A.2d at 81). According to the Law Court's most recent decision:

> We interpret "regular use" exclusions consistent with their "obvious contractual purpose," which "is to cover *occasional or incidental* use of other cars without the payment of an additional premium, but to exclude the *habitual* use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium." Acadia Ins. Co. v. Mascis, 2001 ME 101, ¶ 4, 776 A.2d 617. Stated another way, "The general purpose and effect of [a 'regular use' exclusion] is to give coverage to the insured while engaged in the *only infrequent or merely casual use* of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile *which he frequently uses or has the opportunity to do so*."

Estate of Mason, 2017 ME 58, ¶ 11, 158 A.3d 495 (quoting Allstate, 263 A.2d at 82).

The defendants argue that Michael Lee did not regularly use Lee Tree Company's 2003 Chevrolet Suburban (he used a separate company vehicle). Instead, they argue, he (as distinguished from Lee Tree Company) seldom if ever used it for himself or his family.[2] Defs.' Mem. 2. Therefore, they say, Exclusion

---

[2] The 2003 Suburban was used for a variety of Lee Tree Company tasks. Lee Dep. Tr. 12:5–14. How much Michael Lee used it remains unclear:

11 does not apply. Id. at 3–6. Progressive argues that Exclusion 11 does apply because the Chevrolet Suburban was "furnished or available for [Michael Lee's] regular use" and it was not listed as a covered auto under the Progressive policy. Pl.'s Mot. Summ. J. 6–10 (ECF No. 23) (Pl.'s Mem.). Progressive points to Michael Lee's deposition testimony where he testified forcefully about his complete control of the vehicle's use. Id. at 9–10. For example:

> Q. You did not regularly use the vehicle for your own personal business, did you?
> A. I used it for whatever I needed the vehicle for.
> Q. But it was always for company business, correct?
> A. It's my vehicle I would use it for whatever I needed it for . . . . It's pretty clear. I use the vehicle for whatever I need it for.

Lee Dep. Tr. 47:6–48:1 (objections omitted).

The Law Court has "referred favorably to a list of non-exhaustive factors that the United States Court of Appeals for the Second Circuit considers in making 'regular use' determinations." Estate of Mason, 2017 ME 58, ¶ 16, 158 A.3d 495. Those factors are:

> (1) blanket permission to use the car rather than having to ask permission for each use; (2) availability of a set of keys

---

> Q. In fact, you seldom, if ever, used that vehicle yourself at the time of the accident, correct?
> A. The vehicle was used for company business.
> Q. But you personally didn't use that vehicle, you used a different vehicle, didn't you?
> A. I used every vehicle that we own.
> Q. Okay. But on a regular basis you wouldn't use the GMC that was in – the day of the accident?
> A. It depended on what the work process would be for the day.
> . . . .
> Q. It was not your personal vehicle, was it?
> A. I drive all the vehicles that are owned by Lee Tree.
> Q. But you only drive the vehicle involved in the accident occasionally or once in a while, correct?
> A. I can't tell you how many times I drove the – what the frequency is or when I drove it. I drove it when it was necessary.

Id. at 33:6–15, 35:17–24.

> to the car; (3) continuous, steady, methodical use as opposed to occasional or special use; (4) the nature of the use (e.g. use for all purposes rather than solely business use); and (5) that the insured would reasonably have expected to pay an extra premium to cover the use of the car.

Id. at ¶ 16 n.5 (quoting Amica Mut. Ins. Co. v. Franklin, 147 F.3d 238, 242 (2d Cir. 1998)). Here, with respect to the Chevrolet Suburban, Michael Lee had (1) blanket permission, (2) keys,[3] and (4) ability to use the car for all purposes. He also would (5) reasonably have expected to pay an extra premium to have Progressive coverage of this vehicle which was already covered under the Hartford policy. He did not (3) engage in a "continuous, steady, methodical use as opposed to occasional or special use," but he certainly had the right to do so.

In its 1970 Allstate case, the Maine Law Court quoted approvingly an Oregon case that:

> put the emphasis on the 'right' to use rather than the 'manner of use' by saying:
> "We are of the opinion, therefore, that the phrase 'furnished for regular use' as used in context does not imply the manner of use, that is, putting the automobile to the same uses to which an insured would use his own automobile, but implies a right to the regular use of the automobile in the sense that there is an expressed or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile . . . at such times as he desired, if available."

263 A.2d at 82 (quoting George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co., 349 P.2d 789, 792 (Or. 1960)). Certainly Michael Lee had the right to use the Chevrolet Suburban at whatever times and for whatever purposes he chose, because he had complete and unilateral control over it.[4] He also had coverage

---

[3] Lee Dep. Tr. 34:2–10 ("I have a set of keys [for the vehicle that] are kept with me.").
[4] In his deposition, Michael Lee testified:
> Q. But in general, if you wanted to use the Suburban, you could decide how you wanted to use the Suburban at the time.

6

for the vehicle through the Hartford policy issued to Lee Tree Company. I conclude that under Maine law, Exclusion 11 results in no Progressive insurance coverage for the 2003 Chevrolet Suburban at the time of the accident.[5]

Because there is no coverage, the defendants' counterclaims all fail.

The Clerk shall enter judgment for the plaintiff and against the defendants on all claims. No costs.

**SO ORDERED.**

**DATED THIS 1ST DAY OF AUGUST, 2017**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

    A. Who could and who couldn't, yes.
    Q. It was available for your use.
    A. Right.
    Q. Was it available for whatever use you decided to put it to?
    A. For whatever use I had.
    Q. And whether that be with the company or personally.
    A. Correct.
    Q. Okay. And whether that be somebody you wanted to allow to use it as well.
    A. Correct. That policy was pretty strict, though.
    Q. You mostly – you almost always used it with the company.
    A. Either a family member or an employee. Nobody else drove those vehicles. That is a strict policy of mine.
Lee Dep. Tr. 14:20–15:16 (objections omitted).

[5] I have carefully considered the defendants' four main contrary arguments but find them ultimately unpersuasive. First, they argue that Exclusion 11 does not apply, that Exclusion 12 is the relevant exclusion and that it does not foreclose coverage. Defs.' Mem. 3–6. But Progressive denied coverage under Exclusion 11 and has never relied on Exclusion 12. Since I find that the language of Exclusion 11 supports Progressive's position, it is unnecessary to parse Exclusion 12. Second, they argue that even if Exclusion 11 is the correct provision to apply, it does not foreclose coverage because the accident vehicle "was (a) *not* available for Carolyn Lee's 'regular use,' and (b) was never 'regularly used' by Michael Lee." Id. at 6–8. But as I have determined in text, the issue is whether it was "furnished or available for Michael Lee's regular use," see supra 3–7, and the record shows that it was. Third, they argue that the policy language is ambiguous and should be construed to provide coverage. Defs.' Mem. 8–10. I do not find the language ambiguous. Complex perhaps, but not ambiguous. See Peerless Ins. Co. v. Brennon, 564 A.2d 383, 386 (Me. 1989). Finally, they argue that regular use is undefined, individual use is undefined, multiple vehicle situations are undefined, and that all those terms must be construed to provide coverage. Defs.' Mem. 10–11. I find the policy understandable even in the absence of the definitions.